ORIGINAL

Approved: _____
            MATTHEW LAROCHE / MAX NICHOLAS
            Assistant United States Attorneys

Before:     THE HONORABLE GABRIEL W. GORENSTEIN
            United States Magistrate Judge
            Southern District of New York

15 MAG 3930

U.S. DISTRICT COURT FILED NOV 0 3 2015 S.D. OF N.Y.

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

        - v. -

DAMBELLY SARJO, and
LAMIN SAHO,

                Defendants.

- - - - - - - - - - - - - - - - - - - x

SEALED COMPLAINT

Violation of
18 U.S.C. § 371

COUNTY OF OFFENSE:
BRONX

DOC # _____

SOUTHERN DISTRICT OF NEW YORK, ss.:

        STEVEN THAU, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

COUNT ONE
(Conspiracy to Export and Transport Stolen Motor Vehicles)

        1.   From at least in or about October 2014 up to and including at least in or about January 2015, in the Southern District of New York and elsewhere, DAMBELLY SARJO and LAMIN SAHO, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, the exportation of stolen motor vehicles, in violation of Title 18, United States Code, Section 553, and the transportation of stolen vehicles, in violation of Title 18, United States Code, Section 2312.

        2.   It was a part and an object of the conspiracy that DAMBELLY SARJO and LAMIN SAHO, the defendants, together with others known and unknown, would and did willfully and knowingly export and attempt to export motor vehicles, knowing the same to have been stolen, in violation of Title 18, United States Code, Section 553.

-1-

3. It was further a part and an object of the conspiracy that DAMBELLY SARJO and LAMIN SAHO, the defendants, together with others known and unknown, would and did willfully and knowingly transport, in interstate and foreign commerce, motor vehicles, knowing the same to have been stolen, in violation of Title 18, United States Code, Section 2312.

Overt Act

4. In furtherance of the conspiracy, and to effect the illegal objects thereof, DAMBELLY SARJO and LAMIN SAHO, the defendants, committed the following overt act, among others, in the Southern District of New York and elsewhere:

    a. On or about October 5, 2014, in the Bronx, New York, SARJO and SAHO attended and oversaw the loading of stolen motor vehicles into shipping containers that were subsequently taken to a seaport for transportation to West Africa.

(Title 18, United States Code, Section 371.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5. I am a Detective with the New York City Police Department ("NYPD") assigned to a joint task force with the Department of Homeland Security ("DHS") (collectively, "Law Enforcement"). I have participated in the investigation of this matter, and I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, conversations that I have had with other Law Enforcement agents and individuals, and my review of reports prepared by Law Enforcement. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents, and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6. Based on my training and experience, my involvement in this investigation, and my conversations with other Law Enforcement agents, I have become aware of a fraudulent scheme occurring in multiple cities within the United States that involves renting luxury cars from companies and, instead of returning them, shipping them to destinations in West Africa while stating on the

bill of lading, in substance and in part, that they are salvage motor vehicles, *i.e.*, cars that are damaged and are to be sold for their salvage value. The scheme generally works as follows, with some variation between different manifestations of the scheme:

      a. Individuals working for the scheme (the "Renters") rent luxury cars from various national car rental companies, sometimes using false identification (the "Luxury Cars").

      b. The Renters drive the Luxury Cars to a prearranged location where the cars can be stored temporarily (the "Layup Location").

      c. Other members of the scheme (the "Drivers") pick up the Luxury Cars from the Layup Location and drive them to a second prearranged location (the "Loading Location") where they are loaded into shipping containers (the "Shipping Containers"). Sometimes a separate member of the scheme follows the Drivers to the Loading Location and coordinates or participates in the loading of the Luxury Cars into the Shipping Containers. Each Shipping Container typically contains two or three Luxury Cars.

      d. The Shipping Containers are hauled by truck to a seaport. They are placed on ships and sent to destinations in West Africa. The manifest for each Shipping Container typically represents, in substance and in part, that the container is carrying salvage motor vehicles, when in fact it is carrying high-end rental cars.

      7. Beginning in or around October 2014, I and other Law Enforcement officers began conducting physical surveillance of parking lots in the Bronx at or near 975 Brook Avenue (the "Brook Avenue Lot") and 3480 Third Avenue (the "Third Avenue Lot," together with the Brook Avenue Lot, the "Parking Lots"). We also engaged in video surveillance of the Parking Lots.

      8. Based on my involvement in this investigation, my participation in physical surveillance of the Parking Lots, my review of video surveillance of the Parking Lots, and my discussions with other Law Enforcement officers, I have learned that from at least in or about October 2014 up to and including at least in or about January 2015, Luxury Cars arrived at the Parking Lots and were loaded into Shipping Containers there. By observing the vehicle identification numbers ("VINs") and license plates of the vehicles loaded into the shipping containers at the Parking Lots, and comparing them with the VIN numbers and license plates of rental

-3-

vehicles reported stolen by various national rental car companies, Law Enforcement officers were able to determine that substantially all of the Luxury Cars loaded into the shipping containers had been rented from, and never returned to, national rental car companies.

9. Based on my involvement in this investigation, my participation in physical surveillance of the Parking Lots, my review of video surveillance of the Parking Lots, and my review of reports prepared by other Law Enforcement officers, I am aware that on or about October 5, 2014, the Luxury Cars were accompanied to the Brook Avenue Lot by a 2004 Dodge Caravan with Ohio license plate number FRV-8368 (the "Caravan"). On or about October 20, 2014, the Luxury Cars were again accompanied to the Third Avenue Lot by the Caravan. On each of these occasions, the Caravan arrived at the Parking Lots at nearly the same time as the Luxury Cars. On each occasion, the Luxury Cars were loaded into Shipping Containers.

10. Based on my participation in physical surveillance, on my conversations with others who conducted physical surveillance, and my review of video surveillance, I have learned that DAMBELLY SARJO and LAMIN SAHO, the defendants, were observed exiting the Caravan at the Parking Lots on or about October 5, 2014 and October 20, 2014, and participated in the loading of the Luxury Cars into the Shipping Containers. Among other things:

   a. SARJO and SAHO physically entered the Shipping Containers before the Luxury Cars were loaded into them, and remained present when the Luxury Cars were loaded into the Shipping Containers.

   b. SARJO and SAHO brought loading equipment out of the Caravan and toward the Shipping Containers. The loading equipment was then used to load objects into the Shipping Containers, including the Luxury Cars.

   c. SARJO and SAHO brought mattresses toward the Shipping Containers. The mattresses were then loaded into the Shipping Containers.

11. After the Luxury Cars were loaded into the Shipping Containers on or about October 5, 2014, I observed DAMBELLY SARJO and LAMIN SAHO, the defendants, leave the Brook Avenue Lot in the Caravan. Upon exiting the Brook Avenue Lot, I conducted a traffic stop of the Caravan. During the traffic stop, among other things:

   a. SARJO identified himself as "Sarjo Dambelly"

-4-

and provided a Washington State driver's license in his name.

    b.  SAHO identified himself as "Lamin Saho," provided an identification card in his name from the Republic of Gambia, Africa, and stated that he lives at 1245 Stratford Avenue, Apt. 8C, Bronx, New York (the "Saho Address").

    c.  SARJO and SAHO both stated that they were present at the Parking Lot to load the cars into a Shipping Container for export.

    12.  Based on my training and experience, I am aware that every shipping container has a unique serial number. Based on my involvement in this investigation, my participation in physical surveillance of the Parking Lots, and my review of video surveillance of the Parking Lots, I know that on or about October 5, 2014, DAMBELLY SARJO and LAMIN SAHO, the defendants, loaded the Luxury Cars into a shipping container bearing serial number TGHU7980711, and that on or about October 20, 2014, SARJO and SAHO loaded the Luxury Cars into shipping containers bearing serial numbers CMAU5816136 and GCCU5003188, respectively.

    13.  Based on my training and experience, I am aware that shipping containers carrying cargo to be transported overseas typically require bills of lading that state the content of the containers. Based on my review of paperwork maintained by Customs and Border Patrol ("CBP"), I have learned that the bills of lading for the Shipping Containers stated, in substance and in part, the following:

    a.  The bill of lading associated with TGHU7980711 identified the U.S. Principal Party in Interest ("USPPI")[1] as Royal Express Shipping and Travel ("Royal Express"); identified the cargo as three motor vehicles valued together at approximately $15,000; and identified the country of ultimate destination of the cargo as the Republic of Gambia. The contact person for Royal Express was listed as DAMBELLY SARJO, the defendant.

    b.  The bill of lading associated with CMAU5816136

---

[1] Based on my training and experience and based on my review of the Foreign Trade Regulations, I know that the USPPI is the person or legal entity in the United States that receives the primary benefit from the export transaction and that the USPPI is responsible for completing the bill of lading for an export transaction. See 15 C.F.R. § 30.1(c).

-5-

identified the USPPI as Ismaila Jagne; identified the cargo as three motor vehicles valued together at approximately $2,300; and identified the country of ultimate destination as the Republic of Gambia.

    c. The bill of lading associated with GCCU5003188 identified the USPPI as LAMIN SAHO, the defendant; identified the cargo as three motor vehicles valued together at approximately $15,000; and listed the Saho Address. The bill of lading for GCCU5003188 also identified the country of ultimate destination as the Republic of Gambia.

    WHEREFORE, deponent respectfully requests that warrants be issued for the arrest of DAMBELLY SARJO and LAMIN SAHO, the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

_____
Steven Thau
Detective
New York City Police Department

Sworn to before me this
3rd day of November, 2015

_____
THE HONORABLE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK